## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN POSEY,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1021** |
| **NATIONAL OILWELL VARCO, L.P.,**<br>    **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant, National Oilwell Varco, L.P. ("NOV").[1] NOV seeks summary judgment pursuant to the Fifth Circuit's "borrowed-employee doctrine." Plaintiff Kevin Posey and Intervenor-Plaintiff American Interstate Insurance Company oppose the motion.[2] For the reasons that follow, the motion for summary judgment is **GRANTED**.

## BACKGROUND

This is a civil action involving the personal-injury claims of Plaintiff Kevin Posey. According to Plaintiff, he was injured on or about April 7, 2014, while working for Original USA General Labor, LLC ("Original USA"), at NOV's facility in Port Fourchon, Louisiana, "when a piece of unsecured floor grating gave way, causing him to become pinned between the hole in the grating and a large drum."[3] Plaintiff argues that, as a result of the incident, he "sustained severe and disabling injuries including, but not limited to, a right femoral shaft fracture, torn medial meniscus and injuries to his lumbar spine."[4] Plaintiff filed this action against NOV on April 1, 2015.[5]

---

[1] R. Doc. 47.
[2] R. Docs. 48, 50.
[3] R. Doc. 11 at 2 (Second Amended Complaint).
[4] *Id.*
[5] R. Doc. 1. Since the filing of his initial complaint, Plaintiff has filed two amended complaints, with the most recent, operative amended complaint filed on April 9, 2015. *See* R. Docs. 5, 11.

NOV filed a motion for summary judgment on March 31, 2016, seeking the dismissal of this action with prejudice. NOV contends that, under the Fifth Circuit's borrowed-employee doctrine, Plaintiff Kevin Posey was a borrowed employee of NOV at the time of the incident in which he was injured, which renders NOV immune from tort liability under the Longshore Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(a).[6] In response, Plaintiff filed an opposition on April 12, 2016, arguing summary judgment is inappropriate because genuine issues of material fact remain in dispute with respect to the borrowed-employee issue.[7] The next day, on April 13, 2016, Intervenor-Plaintiff American Interstate Insurance Company ("AIIC")—Original USA's workers' compensation insurer[8]—filed an opposition to the motion on similar grounds.[9]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] "An issue is material if its resolution could affect the outcome of the action."[11] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing

---

[6] R. Doc. 47-1 at 6.

[7] R. Doc. 48 at 1.

[8] AIIC intervened as a plaintiff on July 1, 2015. *See* R. Doc. 27. The complaint-in-intervention states: "At all material times pertinent to this case, AIIC had issued, and had in full force and effect, a policy of workers' compensation insurance in favor of [Original USA], under which policy of insurance AIIC provided workers' compensation coverage for the claim of work-related injury allegedly sustained by Plaintiff." R. Doc. 27 at 2. AIIC contends that, as a result, it is subrogated legally, equitably, and/or contractually "to the rights of Plaintiff, to the extent of all amounts paid by AIIC to and/or on his behalf, and also to the extent any additional amounts which AIIC may be presently obligated or might in the future become obligated to pay to or on behalf of Plaintiff." R. Doc. 27 at 3. Therefore, AIIC seeks "reimbursement for all amounts AIIC has paid to and/or on behalf of Plaintiff, together with legal interest from the date of judicial demand until paid, and any and all expenses," in addition to "a credit against future liability for workers' compensation benefits, of any kind whatsoever, against any recovery by the Plaintiff in the principal action." R. Doc. 27 at 3–4. The instant motion seeks the dismissal of AIIC's complaint-in-intervention, as explained *infra*.

[9] R. Doc. 50.

[10] FED. R. CIV. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[11] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

the evidence."[12] All reasonable inferences are drawn in favor of the non-moving party.[13] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[14]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[15] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[16]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[17] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[18] Thus, the non-moving party may defeat a motion for

---

[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[13] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[14] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[15] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[16] *Celotex*, 477 U.S. at 322–24.
[17] *Id.* at 331–32 (Brennan, J., dissenting).
[18] *See id.* at 332.

summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[19] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[20]

## LAW AND ANALYSIS

NOV's motion is premised, as an initial matter, on Plaintiff Kevin Posey's status as a longshoreman under the Longshore Harbor Workers Compensation Act ("LHWCA").[21] NOV argues that, because Plaintiff is a longshoreman and has been receiving workers' compensation under the LHWCA, and because Plaintiff is a borrowed employee of NOV, Plaintiff's claims are "barred as a matter of law" under the LHWCA.[22] Whether Plaintiff is a longshoreman under the LHWCA involves a two-part test: a "situs" test and a "status" test.[23] "The 'situs' test requires that the employee be injured on navigable waters of the United States," and "[t]he 'status' test requires that the claimant be engaged in maritime employment at the time of the injury."[24] Plaintiff does not disagree with NOV's argument

---

[19] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[20] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[21] R. Doc. 47-1 at 6.

[22] R. Doc. 47-1 at 6.

[23] *See, e.g., Johnson v. Abe's Boat Rentals, Inc.*, No. 14-2213, 2016 WL 127982, at *3 (E.D. La. Jan. 12, 2016).

[24] *Id.* (citing *Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 904 (5th Cir. 1999)).

that he was a longshoreman at the time of the incident in which he was injured.[25] Plaintiff's status as a longshoreman under the LHWCA, however, is an issue that the Court need not decide. Plaintiff is being paid worker's compensation benefits pursuant to either the LHWCA or state workers' compensation law.[26] "Both federal and Louisiana law use the same criteria for determining whether an employee is a borrowed employee."[27] That is, irrespective of whether Plaintiff qualifies as a longshoreman under federal law, the test used to determine borrowed-employee status under the LHWCA is identical to the test used to determine borrowed-employee status under Louisiana state law.[28] The Court now turns to the substantive issue of whether Plaintiff was a borrowed employee of NOV at the time of the incident in which he was injured.

If the Plaintiff was NOV's borrowed employee, NOV is vested with tort immunity, and the Court must dismiss Plaintiff's claims against NOV.[29] Whether Plaintiff was a borrowed employee of NOV is a question of law,[30] and "if sufficient basic factual ingredients are undisputed, the court may grant summary judgment."[31] Borrowed-

---

[25] *See generally* R. Doc. 48.

[26] NOV contends Plaintiff is a longshoreman and is being paid workers' compensation benefits under the LHWCA. R. Doc. 47-1 at 6. However, Plaintiff's claims in this matter were filed pursuant to Louisiana state law and the Court's diversity-of-citizenship jurisdiction. *See* R. Docs. 1, 5, 11. Moreover, AIIC's complaint-in-intervention does not cite the law, whether federal or state, under which Plaintiff is being paid worker's compensation benefits. *See* R. Doc. 27. Although NOV argues that Plaintiff is a longshoreman and is being paid worker's compensation benefits under the LHWCA, NOV acknowledges that Plaintiff may not be a longshoreman and that, if he is not, Plaintiff's benefits are being paid under state workers' compensation law. R. Doc. 47-1 at 6 n.7.

[27] *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 616 (5th Cir. 1986) (citing *Lorton v. Diamond M Drilling Co.*, 540 F.2d 212, 213 n.1 (5th Cir. 1976) (per curiam) ("The plaintiff alleged jurisdiction under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Subsequently, plaintiff amended his complaint to allege diversity of citizenship. We shall assume the latter is the sole basis for federal jurisdiction. In any event, the criteria to be used under the borrowed servant doctrine are the same in Louisiana as in federal law.")).

[28] *English v. Wood Group PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *14 (E.D. La. Aug. 25, 2015) (citations omitted) ("The tort immunity under the LHWCA has been expanded to include 'borrowing employers' under the borrowed employee doctrine.").

[29] *Id.* ("If the Plaintiff is W & T Offshore's borrowed employee, W & T Offshore will thus be vested with § 905(a) tort immunity.").

[30] *Delahoussaye v. Performance Energy Servs, L.L.C.*, 734 F.3d 389, 393 (5th Cir. 2013).

[31] *Capps*, 784 F.2d at 617.

employee status is governed by the Fifth Circuit's decision in *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969). In *Ruiz*, the Fifth Circuit identified nine factors to be used in determining whether an employee can be considered a borrowed employee of another entity.[32] The factors to be considered include:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work was being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished the tools and place for performance?
>
> (7) Was the new employment over a considerable length of time?
>
> (8) Who had the right to discharge the employee?
>
> (9) Who had the obligation to pay the employee?[33]

"While the courts do not use a fixed test and do not decide the issue based on one factor, the courts place the most emphasis on the first factor, control over the employee."[34] The Court considers each *Ruiz* factor, in turn, below.

    *1.* *Who has control over the employee and the work he is performing?*

        As explained above, although no single factor or combination of factors is dispositive, the Fifth Circuit "has considered the first factor—control—to be the central

---

[32] *Ruiz*, 413 F.2d at 312–13.

[33] *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir.), *modified on reh'g*, 841 F.2d 572 (5th Cir. 1988) (citing *Ruiz*, 413 F.2d at 312–13; *Capps*, 784 F.2d at 616–17; *West v. Kerr-McGee Corp.*, 765 F.2d 526, 530 (5th Cir. 1985); *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 376 (5th Cir. 1985); *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1249 (5th Cir. 1984); *Gaudet v. Exxon*, 562 F.2d 351, 355 (5th Cir. 1977)).

[34] *Capps*, 784 F.2d at 617 (citing *Ruiz*, 413 F.2d at 312; *Hebron v. Union Oil Co. of Ca.*, 634 F.2d 245, 247 (5th Cir. 1981) (per curiam)).

factor."[35] This factor requires the Court to distinguish "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."[36]

NOV contends it had authoritative direction and control over Plaintiff because, for example, "NOV managers controlled and directed his day-to-day working orders; and in fact any NOV employee whatsoever (manager or otherwise) could give him direction/instruction on what to do."[37] Moreover, NOV points out that "[t]here were never any Original USA supervisors/managers present during Plaintiff's work for NOV, nor were there even any other Original USA personnel that worked alongside Plaintiff."[38] NOV also notes that Plaintiff "was assigned to a 'crew' with two other NOV employees and a manager. He participated in NOV safety meetings and signed off on NOV JSAs."[39] In response, Plaintiff agrees that (1) his "work was directed exclusively by NOV managers,"[40] (2) "any NOV employee at all (manager or otherwise) had authority to direct Plaintiff's work,"[41] (3) "[n]o Original USA supervisors were ever present at the NOV facilities during Plaintiff's work shifts, and Plaintiff was the only Original USA employee at the NOV facilities,"[42] (4) "Plaintiff slept at the NOV facilities when he was on shift, and if he needed a day off for a doctor's appointment, he had to get approval from NOV,"[43] and (5) "NOV managers/personnel ran all the safety meetings and job safety/hazard analyses that

---

[35] *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677 (5th Cir. 1993) (per curiam).
[36] *Ruiz*, 413 F.2d at 313 (internal quotation marks omitted) (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909)).
[37] R. Doc. 47-1 at 16.
[38] R. Doc. 47-1 at 16.
[39] R. Doc. 47-1 at 16.
[40] R. Doc. 47-2 at 2, ¶9; R. Doc. 48-4 at 3, ¶9.
[41] R. Doc. 47-2 at 2, ¶10; R. Doc. 48-4 at 3, ¶10.
[42] R. Doc. 47-2 at 2, ¶11; R. Doc. 48-4 at 3, ¶11.
[43] R. Doc. 47-2 at 2, ¶12; R. Doc. 48-4 at 3, ¶12.

Plaintiff participated in, using NOV-generated forms that Plaintiff signed along with NOV personnel."[44]

In *Melancon v. Amoco Production Co.*, the Fifth Circuit affirmed the district court's finding, among others, that the control factor weighed in favor of borrowed-employee status.[45] In particular, the Fifth Circuit concluded that Amoco, the alleged borrowing employer, "clearly had control" over the plaintiff because he "took orders" from Amoco personnel "who told him what work to do, and when and where to do it."[46] The Fifth Circuit further explained that the lending employer in *Melancon* "gave no instructions" to the plaintiff "except to go to the Amoco field and perform the work requested by Amoco personnel."[47]

Similarly, in *Billizon v. Conoco, Inc.*, the Fifth Circuit again affirmed the district court's finding that the control factor weighed in favor of borrowed-employee status.[48] In support, the Fifth Circuit explained that the plaintiff was regularly supervised by an employee of Conoco, the alleged borrowing employer.[49] Moreover, the plaintiff attended "daily tailgate meetings" conducted by Conoco personnel to "discuss safety and work-related issues."[50] The Fifth Circuit in *Billizon* also noted that no supervisors from the plaintiff's lending employer were in the field to oversee his work.[51]

In this case, Plaintiff Kevin Posey was supervised by employees and/or managers of NOV, not Original USA. In fact, no one from Original USA worked alongside Plaintiff

---

[44] R. Doc. 47-2 at 2, ¶13; R. Doc. 48-4 at 3, ¶13.
[45] *Melancon*, 834 F.2d at 1244–45.
[46] *Id.* at 1245.
[47] *Id.*
[48] *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).
[49] *Id.*
[50] *Id.*
[51] *Id.*

at the NOV facilities, neither as his peer, his supervisor, nor his manager. Instead, Plaintiff's entire tenure with Original USA was spent working at NOV facilities where he took orders, directions, and instructions from NOV personnel and NOV personnel alone.[52] Furthermore, as in *Billizon*, Plaintiff attended daily safety meetings which were led by NOV supervisors, and Plaintiff regularly completed JSAs for NOV.[53] From these facts, and in light of Fifth Circuit case law detailed above, it is clear that NOV had authoritative control over Plaintiff and that Plaintiff took direction from NOV personnel.

Although Plaintiff concedes that he "took day to day direction from NOV personnel at their facility," Plaintiff nevertheless argues that Original USA controlled his work, which weighs against a finding that Plaintiff was a borrowed employee of NOV.[54] Plaintiff points to the contract between NOV and Original USA, the Temporary Employment Services Agreement ("TESA"), as support for the position that he was subject to the direction and control of Original USA.[55] The TESA states that Original USA shall "[a]ssume the responsibility of hiring, firing and disciplining employees," which, according to the Plaintiff, "expresses a strong assertion of future compliance and an intent that hiring, firing and disciplining are to remain within the parameters of Original USA's exclusive control."[56] What Plaintiff fails to consider, however, are the provisions in the TESA that expressly state that NOV is responsible for the "direction and control" of the day-to-day work of Original USA personnel working at NOV facilities – including the "right to discharge" and "right to reassign" Original USA personnel from NOV worksites.[57]

---

[52] R. Doc. 47-2 at 2, ¶9; R. Doc. 48-4 at 3, ¶9. *See also* R. Doc. 47-2 at 2, ¶10; R. Doc. 48-4 at 3, ¶10; R. Doc. 47-2 at 2, ¶11; R. Doc. 48-4 at 3, ¶11.
[53] R. Doc. 47-2 at 2, ¶13; R. Doc. 48-4 at 3, ¶13.
[54] R. Doc. 48 at 5–6.
[55] R. Doc. 48 at 5–6.
[56] R. Doc. 48 at 5–6.
[57] R. Doc. 47-2 at 1, ¶3; R. Doc. 48-1 at 1, ¶3. *See also* R. Doc. 47-4 at 5, ¶8.

Even if Original USA retained the express right to hire, fire, and discipline its employees as stated in the TESA, this does not lead to the conclusion that Plaintiff was, under the *Ruiz* test, subject to the authoritative direction and control of Original USA. In *Kindred v. Blake International Holdings, L.L.C.*, a court in this district faced similar facts and concluded that, even where the lending employer retained some sort of authority over the employee, it was clear that the borrowing employer had "authoritative direction and control" over the employee.[58] In *Kindred*, the employee (1) "received his daily work assignments" from the borrowing employer's personnel, (2) was directly supervised by the borrowing employer's personnel, and (3) had "little contact" with his lending employer during the "nearly two years" he worked on the borrowing employer's oil-and-gas production platform.[59] There was also evidence, however, that the employee attended "sporadic safety training classes" with his lending employer and received "some post-accident direction" from his lending employer."[60] Nevertheless, the *Kindred* court concluded that "those facts do not preclude a finding of borrowed employee status when [the borrowing employer's] personnel told him 'what work to do, and when and where to do it.'"[61] The court further found that, even where the lending employer retained some authority over the employee, the employee was subject to the "authoritative direction and control" of the borrowing employer because "the supervision and instruction of [the borrowing employer] rose above 'mere suggestion of details or cooperation.'"[62]

In this case, the undisputed facts establish that (1) Plaintiff was directly supervised by NOV personnel at all times, (2) Plaintiff attended NOV-led safety meetings on a daily

---

[58] *Kindred v. Blake Intern. Holdings, L.L.C.*, 805 F. Supp. 2d 278, 282 (E.D. La. 2011) (citations omitted).
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*

basis, (3) Plaintiff slept at NOV facilities when on shift, (4) Plaintiff was required to get approval from NOV personnel to go offsite to conduct personal business and attend doctor's appointments, and (5) Plaintiff had little-to-no interaction with Original USA personnel while working at NOV facilities, where he worked for the entirety of his tenure with Original USA. Even if Original USA retained some limited authority over Plaintiff, the Court finds as a matter of law that Plaintiff was subject to the authoritative direction and control of NOV. Accordingly, the Court finds that this factor weighs in favor of borrowed-employee status.

### 2. *Whose work is being performed?*

The parties agree that Plaintiff performed NOV's work and only NOV's work.[63] Plaintiff specifically agrees that this factor weighs in favor of borrowed-employee status.[64] It is undisputed that "[a]ll of Plaintiff's work at the NOV facilities was NOV's work, performed at the sole direction of NOV managers/personnel, for the benefit of NOV and/or NOV's customers."[65] This factor supports a finding that Plaintiff was a borrowed employee 0f NOV.

### 3. *Was there an agreement between the original and borrowing employer?*

"In deciding this factor, courts have looked to contractual provisions and the behavior of the parties to determine whether an understanding existed."[66] In this case, NOV and Original USA executed a Temporary Employment Services Agreement ("TESA") on November 23, 2014, pursuant to which Original USA supplied workers to work at NOV's facilities.[67] The parties agree "[t]he TESA expressly states that NOV is responsible

---

[63] R. Doc. 47-2 at 3, ¶19; R. Doc. 48-4 at 5, ¶19; R. Doc. 48 at 6.
[64] R. Doc. 48 at 6.
[65] R. Doc. 47-2 at 3, ¶19; R. Doc. 48-4 at 5, ¶19.
[66] *LeBlanc v. AEP Elmwood, LLC*, 946 F. Supp. 2d 546, 551 (E.D. La. 2013) (citing *Brown*, 984 F.2d at 677).
[67] The TESA is attached to NOV's motion as Record Document 47-4.

for the 'direction and control' of the day-to-day work of the Original USA employees during their work at NOV facilities – including 'the right to discharge' and 'the right to reassign' the Original USA personnel from the NOV worksite."[68] Based on the TESA and its provisions alone, this factor weighs in favor of borrowed-employee status. However, the Court's analysis with respect to this *Ruiz* factor does not end here.

Plaintiff points to a March 3, 2010 letter from Original USA to NOV as evidence that the parties had another understanding of their relationship and Plaintiff's employment status.[69] This letter, which pre-existed the TESA that the parties entered into on November 23, 2014, contains a section titled "Independent Contractor," which provides, in part, that "Original USA General Labor, LLC is the employer of all personnel supplied by them" and NOV "agrees not to hire, utilize, consult with or otherwise take advantage of the services of any personnel placed at their company by Original USA."[70] Plaintiff maintains that, pursuant to the March 3, 2010 letter, he was an independent contractor and was not an employee of NOV in any respect.[71] Plaintiff admits that the TESA, which consummated the parties' agreement and came after the March 3, 2010 letter, does not contain an independent-contractor provision but, instead, is silent on the issue.[72] In sum, Plaintiff relies on this letter to create a genuine issue of material fact with respect to this *Ruiz* factor.

As an initial matter, the Court first notes that the March 3, 2010 letter is not competent summary judgment evidence. The letter is unauthenticated and is hearsay.

---

[68] R. Doc. 47-2 at 1, ¶3; R. Doc. 48-4 at 1, ¶3. *See also* R. Doc. 47-4 at 5, ¶8.
[69] R. Doc. 48 at 7–8; R. Doc. 48-5 at 1–2.
[70] R. Doc. 48-3 at 2.
[71] R. Doc. 48 at 7.
[72] R. Doc. 48 at 7–8.

Moreover, according to NOV, the letter was not previously produced during discovery.[73] For the sake of argument, assuming the letter is competent summary judgment evidence, NOV relies on the declaration of Mike Savoie, NOV's Director of the HR Services Group, in which Savoie authenticated the TESA, into which the parties entered *after* the March 3, 2010 letter, as "the only operative agreement between NOV and Original USA that was in effect as of the April 7, 2014 date of the incident alleged in this case."[74] Plaintiff has not rebutted or contradicted NOV's position that the November 23, 2014 TESA superseded the March 3, 2010 letter with competent summary judgment evidence of his own. Even further, assuming (1) the letter is competent summary judgment evidence, and (2) it was not superseded by the TESA, Plaintiff's reliance on the letter fails to create a genuine issue of material fact with respect to the third *Ruiz* factor. The Fifth Circuit and the courts within it have repeatedly held that "[t]he reality at the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter, or waive express contractual provisions."[75] "Obviously parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise."[76] In this case, although the March 3, 2010 letter contains an independent-contractor provision, the reality at NOV's worksites was much different. As stated at length above, NOV exercised direct supervision and control over Plaintiff during his four-year tenure with Original USA, all of which was spent at NOV facilities. As a result, the Court finds that this factor weighs in favor of borrowed-employee status.

---

[73] R. Doc. 54 at 2.
[74] R. Doc. 47-4 at 1 (Declaration of Mike Savoie).
[75] *See, e.g., Melancon*, 834 F.2d at 1245.
[76] *Id.*

4.  _Did the employee acquiesce?_

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them."[77]

In _Brown v. Union Oil Co. of California_, the Fifth Circuit noted that the employee "worked, slept[,] and ate in [the borrowing employer's] field for a month prior to his accident. Although many of our cases affirming borrowed servant status have involved longer periods of work, one month is a sufficient amount of time for [the employee] to appreciate the new work conditions."[78]

In _LeBlanc v. AEP Elmwood LLC_, a court in this district provided further insight into this factor, explaining that "Plaintiff worked at the AEP facility for seven months— giving him enough time to understand the work conditions. This is sufficient to support borrowed employee status."[79]

In this case, Plaintiff worked at NOV facilities for the entirety of his tenure with Original USA, which was roughly four years, much longer than the one-month and seven-month terms in _Brown_ and _LeBlanc_, respectively. Also, as in _Brown_, it undisputed that "Plaintiff slept at the NOV facilities when he was on shift."[80] It is also undisputed that "Plaintiff considered the NOV personnel to be his co-workers and friends, and testified that he 'loved' working at NOV and would undoubtedly have continued working there but for his accident."[81] It is clear that Plaintiff was aware of his work conditions and chose to continue working in them.

---

[77] _Brown_, 984 F.2d at 678.
[78] _Id._ (citing _Melancon_, 834 F.2d at 1241 (5 years); _Alexander v. Chevron U.S.A._, 806 F.2d 526, 527 (5th Cir. 1986) (approximately 1 year); _Gaudet_, 562 F.2d at 355 (approximately 17 years); _but see Capps_, 784 F.2d at 616 (1 day)).
[79] _LeBlanc_, 946 F. Supp. 2d at 552.
[80] R. Doc. 47-2 at 2, ¶12; R. Doc. 48-4 at 3, ¶12.
[81] R. Doc. 47-2 at 3, ¶20; R. Doc. 48-4 at 5, ¶20.

Nevertheless, in opposition to NOV's motion, Plaintiff argues "he never acquiesced in being NOV's employee."[82] Plaintiff notes he was "repeatedly offered to 'convert' to being an NOV employee and repeatedly refused this offer . . . because that would allow NOV to transfer him to other facilities and he wanted to stay in the Fourchon area."[83] According to Plaintiff, he "was aware of the advantages and disadvantages of working as a direct employee of NOV and he declined to do so. Thus, he cannot have acquiesced in a borrowed employee relationship."[84] NOV does not dispute that Plaintiff refused its offers to become a direct employee of NOV on certain occasions, arguing instead that whether or not Plaintiff refused its offers of permanent employment is not determinative of whether Plaintiff acquiesced for purposes of this *Ruiz* factor.[85] The Court agrees with NOV. It is indisputably clear that Plaintiff was aware of his work conditions and chose to continue working in them, which is the operative framework for determining whether an employee acquiesced under *Ruiz.* In *Vincent v. Fieldwood Energy, L.L.C.*, a court in this district addressed a similar situation where the employee enjoyed working at the alleged borrowing employer's facilities but, at the same time, did not consider himself to be a direct employee of the borrowing employer:

> Here, Vincent worked, slept, and ate offshore at Fieldwood's facilities for four months. (Rec. Doc. 11–5 at 7). During this time, he attended daily meetings and received orders from Fieldwood employees. Vincent argues that he did not acquiesce because, while he was satisfied with his working conditions, he did not consider himself a Fieldwood employee. This, however, is not the focus of this factor. The focus is whether he was aware of the conditions and chose to continue working. Both parties assert that Vincent was satisfied with his working conditions at Fieldwood. (Rec. Doc. 11–2 at 11; Rec. Doc. 12 at 7). Thus, this factor supports borrowed-employee status.[86]

---

[82] R. Doc. 48 at 8.
[83] R. Doc. 48 at 8.
[84] R. Doc. 48 at 8.
[85] R. Doc. 54 at 9–10.
[86] *Vincent v. Fieldwood Energy, L.L.C.*, No. 14-2885, 2015 WL 6758269, at *4 (E.D. La. Nov. 5, 2015).

The Court finds that, because Plaintiff was aware of his work conditions and chose to continue working in them, this factor weighs in favor of borrowed-employee status.

5. _Did the original employer terminate his relationship with the employee?_

This factor does not require the lending employer to completely sever its relationship with the borrowed employee. Instead, the focus is "on the lending employer's relationship with the employee while the borrowing occurs."[87]

In _Crawford v. BP Corp. North America Inc._, the lending employer exercised "little to no control" over the employee while the employee worked for the borrowing employer, and the lending employer "placed no restrictions" on the employee's employment with the borrowing employer.[88] In _Crawford_, this Court found that, in light of such a relationship between the employee and his lending employer, this factor weighed in favor of borrowed-employee status.[89]

Likewise, the Fifth Circuit in _Capps v. N.L. Baroid-NL Industries, Inc._, found that where the lending employer "exercised no control" over the employee while he worked for the borrowing employer and "placed no restrictions" on the employee's employment with the borrowing employer, the lending employer effectively terminated its relationship with the employee, which weighed in favor of borrowed-employee status.[90]

In _Hotard v. Devon Energy Production Co. L.P._, the Fifth Circuit reasoned that "the fact that [the employee] had no contact with [his lending employer] and was

---

[87] _Capps_, 784 F.2d at 617–18.
[88] _Crawford v. BP Corp. N. Am., Inc._, No. 13-445, 2015 WL 1190123, at *3 (E.D. La. Mar. 16, 2015).
[89] _Id._
[90] _Capps_, 784 F.2d at 617–18.

supervised totally by [his lending employer's] employees while on the platform is sufficient to meet this factor."[91]

In this case, the following facts are undisputed:

- At all three [NOV] facilities, Plaintiff's work was directed exclusively by NOV managers.[92]

- Additionally, any NOV employee at all (manager or otherwise) had the authority to direct Plaintiff's work.[93]

- No Original USA supervisors were ever present at the NOV facilities during Plaintiff's work shifts, and Plaintiff was the only original USA employee at the NOV facilities.[94]

- All of Plaintiff's work at the NOV facilities was NOV's work, performed at the sole direction of NOV managers/personnel, for the benefit of NOV and/or NOV's customers.[95]

Even in light of these undisputed facts, Plaintiff Kevin Posey contends that this factor does not weigh in favor of borrowed-employee status because, "[w]hile NOV supervised Plaintiff's work on site, the evidence suggests that Original USA never terminated its relationship with Posey while he was working at the NOV facility."[96] According to Plaintiff, because Original USA maintained the responsibility of "hiring, firing and disciplining" its employees, and because Original USA "also remained responsible for wages, payroll taxes and withholding[s]," Original USA never terminated its relationship with Kevin Posey.

The Court finds, however, that even if true, Plaintiff's argument is not material to the resolution of this *Ruiz* factor. It is undisputed that, while working at NOV, (1) Plaintiff

[91] *Hotard v. Devon Energy Prod. Co. L.P.*, 308 F. App'x 739, 742 (5th Cir. 2009) (citing *Melancon*, 834 F.2d at 1246).
[92] R. Doc. 47-2 at 2, ¶9; R. Doc. 48-4 at 3, ¶9.
[93] R. Doc. 47-2 at 2, ¶10; R. Doc. 48-4 at 3, ¶10.
[94] R. Doc. 47-2 at 2, ¶11; R. Doc. 48-4 at 3, ¶11.
[95] R. Doc. 47-2 at 3, ¶19; R. Doc. 48-4 at 5, ¶19.
[96] R. Doc. 48 at 9.

had little-to-no contact with Original USA employees and/or supervisors, (2) Plaintiff was supervised entirely by NOV employees and supervisors, and (3) Original USA placed no restrictions on Plaintiff's employment at NOV.[97] In light of these facts, and guided by the Fifth Circuit's decisions in *Capps* and *Hotard* and this Court's prior decision in *Crawford*, the Court finds that this factor weighs in favor of borrowed employee status.

6. <u>*Who furnished the tools and place for performance?*</u>

This factor indisputably weighs in favor of borrowed-employee status. The parties agree that "[a]ll the equipment and tools Plaintiff used in his work at NOV facilities were provided by NOV, and the TESA expressly provides that NOV would provide all such equipment and tools, which would remain NOV's sole property and subject to NOV's sole control."[98] This factor clearly supports a finding that Plaintiff was a borrowed employee Of NOV.

7. <u>*Was the new employment over a considerable length of time?*</u>

"Where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee."[99] In this case, this factor weighs in favor of borrowed-employee status. The parties agree that the "Plaintiff worked solely at NOV facilities for the entire roughly four years of his pre-accident employment with Original USA, exclusively alongside other direct employees of NOV."[100] Stated differently, Plaintiff worked for Original USA for approximately four years, and the entirety of his employment with Original USA was spent working at NOV facilities. In fact, Plaintiff specifically admits that the "entirety of [his] employment by Original USA was spent at NOV facilities."[101]

---

[97] R. Doc. 47-2 at 2, ¶¶9–12; R. Doc. 48-4 at 3, ¶¶9–12.
[98] R. Doc. 47-2 at 3, ¶18; R. Doc. 48-4 at 4, ¶18.
[99] *Capps*, 784 F.2d at 618.
[100] R. Doc. 47-2 at 2, ¶6; R. Doc. 48-4 at 2, ¶6.
[101] R. Doc. 48 at 9.

In *Crawford v. BP Corporation North America, Inc.*, this Court found that "over two years" of working on board the borrowing employer's offshore platform "clearly favor[ed] borrowed employee status."[102] In *Hotard v. Devon Energy Corp., L.P.*, a court in the Western District of Louisiana found that an even shorter length of employment was considerable under this *Ruiz* factor.[103] The *Hotard* court noted that: "Hotard worked on Devon's Platform . . . for over eleven months, almost a year. As such, this factor weighs in favor of finding for borrowed employee status."[104] The *Hotard* decision was upheld on appeal by the Fifth Circuit.[105]

In this case, Plaintiff Kevin Posey worked at NOV facilities for roughly four years, which the Court finds to be considerable. This factor weighs in favor of borrowed-employee status.

### 8. *Who had the right to discharge the employee?*

The proper focus under this factor is whether the borrowing employer had the right to terminate the borrowed employee's services with itself.[106] This factor "asks whether the alleged borrowing employer has the right to terminate its relationship with the worker."[107] There is no dispute in this case that NOV had the "right to discharge" and the "right to reassign" Original USA personnel from NOV worksites.[108] Nevertheless, the Plaintiff maintains this factor weighs against borrowed-employee status because "NOV only has the right to discharge [him] from the worksite or reassign him, *not* to terminate him."[109]

---

[102] *Crawford*, 2015 WL 1190123, at *4.
[103] *Hotard v. Devon Energy Corp., L.P.*, No. 07-1476, 2008 WL 2228922, at *5 (W.D. La. May 29, 2008) (citing *U.S. Fire Ins. Co. v. Miller*, 381 F.3d 385, 390 (5th Cir. 2004)).
[104] *Id.*
[105] *See Hotard*, 308 F. App'x at 742.
[106] *Capps*, 784 F.2d at 618.
[107] *Butcher v. Superior Offshore Intern., LLC*, 754 F. Supp. 2d 829, 839 (E.D. La. 2010).
[108] R. Doc. 47-2 at 1, ¶3; R. Doc. 48-4 at 1, ¶3.
[109] R. Doc. 48 at 9–10.

In *Melancon v. Amoco Production Co.*, the Fifth Circuit recognized that, for this factor to weigh in favor of borrowed-employee status, the alleged borrowing employer needs only to retain the authority to discharge the borrowed employee from its employ, its projects, or its services.[110] The Fifth Circuit explained, specifically, that "Amoco [the borrowing employer] also had the right to discharge Melancon even though Amoco could not terminate Melancon's employment with Beraud [the lending employer]. Amoco's right to terminate Melancon's services in the Amoco field satisfied this requirement."[111]

In this case, the TESA specifically vests NOV with the "right to discharge" and the "right to reassign" Original USA personnel from its worksites. It is clear that NOV's right to discharge Original USA personnel, when viewed in context with NOV's right to reassign Original USA personnel to other NOV worksites, contemplates that NOV can effectively terminate Original USA personnel from working at NOV facilities altogether. Because NOV had the right to terminate Plaintiff's services with itself, this factor weighs in favor of borrowed-employee status.

9. *Who had the obligation to pay the employee?*

"The determinative inquiry here is whether the alleged borrowing employer furnished the funds from which the original employer paid the plaintiff."[112] In this case, the parties agree that "Plaintiff filled out time tickets for his work at NOV and submitted those time tickets to his NOV manager for approval, pursuant to NOV's obligation under the TESA to pay Original USA for all 'undisputed' amounts due for Plaintiff's time (as approved by Plaintiff's NOV managers."[113] Plaintiff then received his pay checks from

---

[110] *Melancon*, 834 F.2d at 1246.
[111] *Id.* (citing *Capps*, 784 F.2d at 618; *Hebron*, 634 F.2d at 247).
[112] *Vincent*, 2015 WL 6758269, at *6.
[113] R. Doc. 47-2 at 3, ¶16; R. Doc. 48-4 at 4, ¶16.

Original USA. Although Plaintiff argues that this factor weighs against borrowed-employee status, Plaintiff admits that the funds paid to him by Original USA "were furnished by NOV based upon time tickets."[114] Plaintiff's argument does not prevail, and for the following reasons, the Court finds that this factor weighs in favor of borrowed-employee status.

The Court finds *Vincent v. Fieldwood Energy, L.L.C.*, a recent decision from a court in this district, instructive with respect to this *Ruiz* factor.[115] The *Vincent* court, faced with a payroll arrangement similar to the payroll arrangement in this case, summarized the relevant case law as follows:

> In *Brown*, the original employer paid the plaintiff, but his pay was based on time tickets that had to be verified daily by the alleged borrowing employer. *Brown*, 984 F.2d at 679. The Fifth Circuit wrote that this procedure supports borrowed-employee status. *Id.* Similarly, in *Hotard*, the alleged borrowing employer approved time sheets and paid the original employer an hourly rate for the plaintiff's work, and the original employer issued the plaintiff a check. *Hotard*, 308 F. App'x at 739. The Fifth Circuit wrote that this structure regarding the obligation to pay favors borrowed-employee status. *Id.*
>
> Here, deposition testimony establishes that Vincent turned in timesheets to Fieldwood for verification and approval. (Rec. Doc. 11–3 at 3). Wood Group then paid Vincent for hours that were approved, and Wood Group was reimbursed by Fieldwood for the hours worked by Vincent. This structure is the same as those in *Brown* and *Hotard*, so this factor favors borrowed-employee status.

The Court also notes that, with respect to the ninth *Ruiz* factor, this case is on all fours with its prior decision in *Crawford v. BP Corp. North America, Inc.*[116] In *Crawford*, the Court found it significant that the plaintiff completed "daily time sheets," which, if approved by the alleged borrowing employer, resulted in the plaintiff's lending employer

---

[114] R. Doc. 48 at 10.
[115] *See Vincent*, 2015 WL 6758269.
[116] *Crawford*, 2015 WL 1190123, at *4.

remitting the appropriate wages.[117] In this case, similar to *Vincent*, *Brown*, *Hotard*, and *Crawford*, Plaintiff Kevin Posey recorded his hours on time tickets and submitted the time tickets to NOV managers for review and approval.[118] If the time tickets were approved, NOV would then pay Original USA for Plaintiff's time, and Original USA subsequently paid Plaintiff his wages.[119] The Court finds that this factor weighs in favor of borrowed-employee status.

## **CONCLUSION**

In summary, all nine *Ruiz* factors weigh in favor of borrowed-employee status. The Court finds as a matter of law that Plaintiff Kevin Posey was a borrowed employee of NOV at the time of his injury. NOV is thus vested with tort immunity, and Plaintiff's claims against NOV must be dismissed. Moreover, American Interstate Insurance Company's Complaint-in-Intervention, which is a derivative claim that rises and falls with Plaintiff's claims against NOV, also must be dismissed.

Accordingly;

**IT IS ORDERED** that NOV's motion for summary judgment is **GRANTED**,[120] and Plaintiff's claims against National Oilwell Varco, L.P., be and hereby are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that American Interstate Insurance Company's claims as pleaded in its Complaint-in-Intervention[121] be and hereby are **DISMISSED WITH PREJUDICE**.

---

[117] *Id.*
[118] R. Doc. 47-2 at 3, ¶16; R. Doc. 48-4 at 4, ¶16. *See also* R. Doc. 48 at 10.
[119] R. Doc. 47-2 at 3, ¶16, 17; R. Doc. 48-4 at 4, ¶16, 17. *See also* R. Doc. 48 at 10.
[120] R. Doc. 47.
[121] R. Doc. 27.

New Orleans, Louisiana, this 21st day of June, 2016.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**